UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY WRAY,                                      Case No. 13-12322

            Plaintiff,                          John Corbett O'Meara
v.                                               United States District Judge

COMMISSIONER OF SOCIAL SECURITY                  Michael Hluchaniuk
                                                 United States Magistrate Judge

            Defendants.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 11)

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On May 24, 2013, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1).[1] Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance

---

[1] Plaintiff had legal counsel until July 18, 2014, when the motion to withdraw filed by his counsel was granted. (Dkt. 16). Plaintiff was given a deadline of August 1, 2014 to find a new lawyer and file a supplement to his motion for summary judgment, but he did not do so. *Id*. Thus, this matter will be decided on the motions and briefs already submitted by the parties.

benefits.  (Dkt. 2).[2]  This matter is before the Court on cross-motions for summary

judgment.  (Dkt. 8, 11).

B.    Administrative Proceedings

Plaintiff filed the instant claims for a period of disability and disability

insurance benefits on April 16, 2011, alleging disability beginning May 30, 2007.

(Dkt. 6-2, Pg ID 45).  Plaintiff's claims were initially disapproved by the

Commissioner on June 15, 2011.  (Dkt. 6-2, Pg ID 45).  Plaintiff requested a

hearing and on April 5, 2012, plaintiff appeared, with counsel, before

Administrative Law Judge ("ALJ") Earl J. Witten, who considered the case de

novo.  (Dkt. 6-2, Pg ID 54-90).  In a decision dated June 1, 2012, the ALJ found

that plaintiff was not disabled.  (Dkt. 6-2, Pg ID 45-51).  Plaintiff requested a

review of this decision, and the ALJ's decision became the final decision of the

Commissioner when the Appeals Council, on March 22, 2013, denied plaintiff's

request for review.  (Dkt. 6-2, Pg ID 22-29); *Wilson v. Comm'r of Soc. Sec.*, 378

F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

---

[2]  This matter was originally referred to Magistrate Judge Mark A. Randon and was
reassigned to the undersigned on March 19, 2014.

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

A.    <u>ALJ Findings</u>

Plaintiff was born in 1959 and was 47 years of age on the alleged disability onset date.  (Dkt. 6-2, Pg ID 50).  Plaintiff had past relevant work as a door installer and fender fitter.  (Dkt. 6-2, Pg ID 49).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 6-2, Pg ID 46).  At step two, the ALJ found that plaintiff's degenerative joint disease of the left shoulder, back pain, and hammer toe were "severe" within the meaning of the second sequential step.  (Dkt. 6-2, Pg ID 47).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 6-2, Pg ID 48).

The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform light work with the following limitations:

> to lift or carry a maximum of 20 pounds occasionally and 10 pounds frequently with the right upper extremity and 10 pounds occasionally and 5 pounds frequently with the left upper extremity. The claimant can walk or stand for six hours and sit for six hours. He can do no overhead work. The claimant should only occasionally bend, twist or turn. He should do no climbing, crawling, squatting or kneeling. The claimant should use no air or vibrating tools. He should not work around dangerous machinery

> or heights. The claimant should do no forceful gripping
> or grasping.

(Dkt. 6-2, Pg ID 48).  At Step Four, the ALJ found that plaintiff was unable to

perform his past relevant work.  (Dkt. 6-2, Pg ID 49).  However, the ALJ

determined that, considering plaintiff's age, education, experience, and RFC, there

were jobs that exist in sufficient numbers that plaintiff can perform and therefore,

plaintiff had not been under a disability from the alleged onset date through the

date of the decision.  (Dkt. 6-2, Pg ID 50-51).

> B.    Plaintiff's Claims of Error

The ALJ determined that plaintiff could not perform any of his past relevant

work.  (Tr. 24).  Accordingly, plaintiff asserts the burden of proof then shifted to

the Commissioner to prove that plaintiff was capable, considering his age,

education, and past work experience, of engaging in other work. 20 C.F.R.

§§ 404.1520(b)-(f). To meet this burden, the Commissioner must make a finding

"supported by substantial evidence that [the claimant] has a vocational

qualification to perform specific jobs."  *Varley v Sec' of Health & Human Servs.*,

820 F.2d 777, 779 (6th Cir. 1987).  According to plaintiff, because each element

of the hypothetical does not accurately describe him in all significant, relevant

respects, the VE's testimony at the hearing should not constitute substantial

evidence.  Plaintiff asserts that the ALJ did not properly evaluate his impairments

in the first six hypothetical questions, and therefore, the hypotheticals are flawed.

Plaintiff contends that the record documents that he has degenerative joint disease of the left shoulder, back pain, and hammer toe, yet the ALJ found claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 22). The ALJ noted the vocational expert's testimony that, given all of the factors, the claimant would be able to perform certain jobs such as a packer of small parts, assembler, ticket seller, and bench handler. (Tr. 25). Plaintiff maintains that this determination is erroneous. Plaintiff testified at the hearing that he was not able to sit for longer than 30 to 40 minutes due to back pain. (Tr. 44). Additionally, because of the pain, he is limited in his ability to bend or twist at the waist. (Tr. 46). If he does either, he suffers from radiating pain down his lower extremities. (Tr. 46). In addition to these limitations, plaintiff says he also suffers from arthritis in the hands and feet. (Tr. 43). Thus, if he tries to grip or grasp anything, his hands become swollen. (Tr. 45). This condition precludes him from picking things up as he is in a lot of pain.

As a result of all of these ailments, plaintiff takes medication. (Tr. 40). Plaintiff contends that even with these medications, his pain is still at a five. (Tr. 40). Without the medication, his pain is at an eight. (Tr. 40). Plaintiff asserts that the ALJ's finding that he is capable of performing the positions of a packer of

small parts, assembler, ticket seller, and bench handler while he continuously requires the need to refrain from use of his hands, is limited to sitting for 30 to 40 minutes, and has shoulder pain, is not substantiated. Plaintiff argues that, to require him to perform these positions further subjects him to more pain and suffering. Plaintiff says that requiring someone with these disabilities to be subjected to the possibility of more pain and humiliation is not justified and it is inhumane.

Plaintiff continues that even the ALJ indicated that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" yet plaintiff was deemed not credible. (Tr. 24). According to plaintiff, the limitations that he faces effectively preclude him from performing any work, including the listed representative occupations, and the reasoning to support his lack of credibility is not substantiated.

Plaintiff indicated that he was significantly limited in his ability to sit, stand, pick things up, and gripping and grasping. (Tr. 42, 43, 44, 45). Plaintiff asks how a person who cannot perform even these basic functions can possibly be expected to perform any of these positions? According to plaintiff, they cannot. Plaintiff says that he cannot engage in any gripping or grasping, constantly has to change positions and stretch, and is limited in his ability to function with the upper extremities, and is on medication for all of these ailments. Thus, plaintiff

maintains that the first six hypothetical questions posed to the vocational expert are improper.

Plaintiff also argues that he is incapable of performing even these representative jobs because each of these jobs, as expected, requires either sitting or standing throughout the day, as well as gripping and grasping and use of the upper extremities.  According to plaintiff, the truth is that he "can't hardly pick things up."  (Tr. 44).  Thus, plaintiff contends that he cannot perform these positions, and to do so could cause further or more prolonged damage.

Plaintiff concludes that because the ALJ has correctly concluded that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . ." and the only justification for not labeling plaintiff as "disabled" at that time is due to credibility, plaintiff asks that the existing medical records be re-evaluated.  (Tr. 24).  Plaintiff requests that the Court reverse the decision denying benefits and remand this case with an award of benefits.  In the alternative, plaintiff requests that this matter be remanded for further proceedings consistent with the above arguments.

### C.    The Commissioner's Motion for Summary Judgment

The Commissioner maintains that plaintiff erroneously attacks the ALJ's decision on the grounds that the ALJ's RFC did not accommodate plaintiff's back and shoulder pain, and his gripping and grasping limitations.  While plaintiff

focuses exclusively on his hearing testimony about his symptoms, the Commissioner asserts that the entire record as a whole shows that the ALJ's RFC finding aptly accommodates plaintiff's credible limitations.

Turning to plaintiff's back and shoulder pain, the Commissioner says that the ALJ considered plaintiff's testimony that he had constant left shoulder pain, that his pain level was 5 out of 10 with medication and 8 out of 10 without medication, that he had to shift when he sat 30 to 40 minutes, and that he had low back pain when he stood up. (Tr. 24, 38, 40-44, 46). According to the Commissioner, the ALJ reasonably concluded, however, that plaintiff's back and left shoulder impairments were not as severe as he alleged and were not work preclusive. (Tr. 24). In particular, the ALJ considered medical evidence that revealed normal x-rays and generally unremarkable examinations. (Tr. 24). The Commissioner points out that an ALJ may reject a claimant's subjective complaints where, as here, objective medical evidence did not suggest he was disabled. *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994). For example, the ALJ noted that November 2009 and August 2010 x-rays of plaintiff's left shoulder were normal. (Tr. 24, 170, 182). In March 2011, treating orthopedist Dr. Detrisac reported that plaintiff had no problems with his right shoulder, and in his left shoulder, plaintiff had good strength of flexion, good minus strength of abduction, good strength of external rotation, and normal

strength of internal rotation.  (Tr. 24, 179).  In August 2011, treating physician Dr. Elmer Novis examined plaintiff and reported that he had normal gait and station, normal range of motion, normal stability, and normal muscle strength and tone. (Tr. 24, 224).  In December 2011, plaintiff complained to Dr. Novis of back pain, yet Dr. Novis found that plaintiff's musculoskeletal examination was "negative," that he had normal gait, station, and range of motion, but some "local tenderness" in his spine.  (Tr. 190-91).  In February 2012, Dr. Novis again reported that plaintiff had a normal examination, but had some point tenderness in his left shoulder.  (Tr. 24, 186-88).

According to the Commissioner, the ALJ also appropriately found that plaintiff's reports about his activities undercut his assertion that his was disabled. (Tr. 24).  An ALJ may consider a claimant's activities in evaluating his assertions of pain or ailments.  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).  Despite plaintiff's claims that he had trouble walking, he told Dr. Novis in August 2011 that he regularly exercised three or more times per week, which included walking.  (Tr. 24, 48-49, 222).  Dr. Novis' other treatment notes also indicated that plaintiff recently "did a lot of walking."  (Tr. 192, 198, 201).  In May 2011, plaintiff reported that he handled his personal care, shopped, prepared meals, and did light housework and chores for about two to three hours at a time (Tr. 24, 145-48).  Further, although plaintiff testified that he could sit for only 30

to 40 minutes, he also testified that he could drive for two hours without stopping. (Tr. 24, 44, 47).  The Commissioner asserts that a court should defer to an ALJ's credibility determination where, as here, there are "demonstrable discrepancies" in a claimant's testimony.  *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  In addition, the ALJ noted on the record at the hearing that plaintiff testified in an animated manner and waved his arms, even though he claimed to have disabling left shoulder pain.  (Tr. 52-53).

Finally, the ALJ considered that plaintiff was not compliant with treatment for his shoulder.  (Tr. 23-24).  A claimant's failure to seek treatment for a physical impairment is a reason to find him not credible.  *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also* Social Sec. Rul. 96-7p, 1996 WL 374186, at *7 ("individual's statements may be less credible. . . if the medical reports or records show that the individual is not following the treatment as prescribed").  In fact, in April 2011, Dr. Detrisac told plaintiff that his shoulder would not improve without treatment and recommended that he consider arthroscopy.  (Tr. 23-24, 178).  According to Dr. Detrisac, plaintiff declined the surgery recommendation and instead "went through a litany of other orthopedic complaints and because of all these he wishes to apply to social security disability [and] basically wanted my support."  (Tr. 23-24, 178).  The Commissioner contends that this evidence further suggested that plaintiff's shoulder pain was not

disabling.

As for his hand impairments, the Commissioner asserts that the ALJ considered plaintiff's allegations of hand arthritis and that his hands swell if he grasps, pushes or pulls, but discounted them because nothing in the record suggested he had those impairments.  (Tr. 23, 44-47).  Notably, plaintiff testified at the hearing that he could use his hands to pick a penny up from the table so long as he did not "overstress" or "overwork" his hands.  (Tr. 50).  And, plaintiff has not pointed to any evidence, other than his statements about his symptoms, substantiating his claim that he has disabling arthritis in his hands.  Moreover, the Commissioner asserts that plaintiff overlooks the fact that the ALJ did not fully discredit his statements about his symptoms.  (Tr. 23).  Indeed, the ALJ accommodated plaintiff's statements about his back pain to the extent credible by restricting plaintiff from work that involved more than occasional bending, twisting, or turning, and no climbing, crawling, squatting, or kneeling.  (Tr. 23). Similarly, the Commissioner points out that the ALJ accommodated plaintiff's left shoulder pain by imposing additional lifting restrictions for his left arm and precluding him from all overhead work.  (Tr. 23).

Finally, the ALJ partially credited plaintiff's statements about gripping and grasping by restricting him from work that involved forceful gripping or grasping or the use of air or vibrating tools.  (Tr. 23).  Despite all those accommodations,

the ALJ still found that plaintiff was not disabled because jobs existed that he could perform in the national economy.  According to the Commissioner, it is telling that no medical source opinion indicated that plaintiff was more limited than as determined by the ALJ.  Thus, the Commissioner maintains that plaintiff has not met his burden of proving that he is disabled.  *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) ("The burden lies with the claimant to prove that []he is disabled.").  Based on the foregoing, the Commissioner asks the Court to affirm the ALJ's decision.

### III.   DISCUSSION

#### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing, *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed

> to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

        1.    The ALJ's credibility determination is supported by substantial evidence

Plaintiff claims that the ALJ's credibility analysis is flawed and is not based on a proper characterization of the record evidence.  The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms.  *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1983). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment . . . that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  *Id.*.  Second, SSR 96-7p directs that, whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record."  *Id.*  Credibility determinations concerning a claimant's subjective complaints are peculiarly within

the province of the ALJ. *See*, *e.g.*, *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues, *see Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987), and the court does not make its own credibility determinations. *See Walters*, 127 F.3d at 528. Rather, the court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed. . . ." *Kuhn v. Comm'r of Soc. Sec.*, 124 Fed. Appx. 943, 945 (6th Cir. 2005). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 485, 488 (6th Cir. 2005). "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey*, 987 F.2d at 1234; *see White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). However, credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *See Walters*, 127 F.3d at 531.

The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily

activities, and other evidence in the record.  *See Walters v. Comm'r of Soc. Sec.*,
127 F.3d 525, 531 (6th Cir. 1997).  Rather, when a complaint of pain or other
symptoms is in issue, after the ALJ finds a medical condition that could
reasonably be expected to produce the claimant's alleged symptoms, he must
consider "the entire case record, including the objective medical evidence,
statements and other information provided by treating or examining physicians . . .
and any other relevant evidence in the case record" to determine if the claimant's
claims regarding the level of his pain are credible.  SSR 96-7p, 1996 WL 374186,
at *1; *see also* 20 C.F.R. § 404.1529.  Consistency between the plaintiff's
subjective complaints and the record evidence 'tends to support the credibility of
the [plaintiff], while inconsistency, although not necessarily defeating, should
have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852,
863 (6th Cir. 2011).

         In the view of the undersigned, the ALJ's finding that the objective record
evidence does not support plaintiff's claims of disabling limitations is supported
by substantial evidence.  The ALJ's credibility determination is thorough, detailed
and amply supported by the record.  The ALJ properly looked at the objective
medical evidence, plaintiff's daily activities, plaintiff's conservative treatment,
and his failure to follow treatment recommendations as undermining the claimed
severity of plaintiff's symptoms.  As the Commissioner appropriately points out,

all of these considerations were proper under the relevant regulation.  *See* 20

C.F.R. § 404.1529(c)(2) (objective medical evidence), (c)(3)(I) (daily activities),

(c)(3)(iv) (effectiveness of medication), (c)(3)(v) (treatment other than

medication), and (c)(3)(vi) (other factors).

Plaintiff disagrees with the ALJ's evaluation of this evidence, but it is the

province of the ALJ to make credibility determinations and plaintiff provides no

compelling reason to disturb the ALJ's credibility determination.  The ALJ

credited the physician's assessments and diagnoses, evaluated the extent to which

the severity of plaintiff's symptoms could reasonably be accepted as consistent

with the medical evidence, and found plaintiff's testimony about the extent of his

limitations not fully credible.  "[A]n ALJ's findings based on the credibility of the

applicant are to be accorded great weight and deference, particularly since an ALJ

is charged with the duty of observing a witness's demeanor and credibility."

*Walters*, 127 F.3d at 531.  The undersigned concludes that there is substantial

evidence in the record to support the ALJ's credibility findings and conclusion

that plaintiff's impairments do not preclude him from performing the identified

jobs.  Significantly, plaintiff has failed to produce medical evidence or an opinion

showing that he had greater limitations than the ALJ found.  *See Maher v. Sec'y of

Health and Human Servs*., 898 F.2d 1106, 1109 (6th Cir. 1987), citing *Nunn v.

Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions

constitutes substantial evidence for a finding of non-disability.").

2.    The ALJ's RFC determination and Step Five finding are
supported by substantial evidence

Plaintiff complains that the ALJ improperly relied on the vocational expert's testimony, alleging that the hypothetical question posed to the vocational expert does not accurately describe plaintiff in all significant, relevant respects and that the vocational expert's testimony at the hearing therefore does not constitute substantial evidence supporting the ALJ's determination that plaintiff is not disabled.  Although plaintiff phrases this as a Step Five finding, the undersigned concludes that plaintiff is attempting to refute the RFC finding via a purported Step Five error.  *See Kirchner v. Colvin*, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").

Plaintiff's argument concerning the hypothetical posed to the vocational expert essentially mirrors his argument regarding the ALJ's credibility assessment. Further, the undersigned notes that plaintiff's "diagnoses," in and of themselves, are not evidence that he is limited in any particular way.  Simply because plaintiff suffers from a certain condition or carries a certain diagnosis does not equate to disability or a particular RFC.  Rather, the residual functional capacity

Report and Recommendation
Cross-Motions for Summary Judgment
*Wray v. Comm'r*; Case No. 13-12322

circumscribes "the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from–though his maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004). "The regulations recognized that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). Thus, the mere existence of any condition from which plaintiff may have suffered does not necessarily establish any functional limitation or disability.

To the extent plaintiff is arguing that the ALJ's RFC determination is in error because that determination does not include plaintiff's subjective testimony, that argument is unavailing, as "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability," and "can present a hypothetical to the [vocational expert] on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d

469, 476 (6th Cir. 2003).  The undersigned further notes that the ALJ thoroughly discussed and evaluated all the record evidence and explained that the medical evidence of record does not suggest limitations greater than those articulated in the RFC.  It is well-settled that an ALJ is not obliged to incorporate unsubstantiated complaints into his hypothetical questions to the vocational expert.  *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).  The ALJ accommodated plaintiff's limitations by limiting plaintiff to a limited range of light exertional work.  Thus, while the record evidence indicates that plaintiff does have severe impairments, as noted by the ALJ, it does not specifically support plaintiff's testimony regarding the extent of his limitations.  Indeed, as explained above, there is evidence to support the ALJ's finding that plaintiff was not fully credible.

Because the ALJ reached his decision using correct legal standards and because those findings were supported by substantial evidence, the Court must affirm it, even if reasonably minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2006) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is

substantial evidence in the record that would have supported an opposite conclusion.").

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Report and Recommendation
Cross-Motions for Summary Judgment
*Wray v. Comm'r*; Case No. 13-12322

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 18, 2014                     s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 18, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Alison Schwartz and Lynn Marie Dodge and that I have mailed by United States Postal Service to the following non-ECF participant: Terry Wray, 1500 Owen Street, Lansing, MI 48915.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov